# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| IMMUNEX CORPORATION; AMGEN MANUFACTURING, LIMITED; and HOFFMANN-LA ROCHE INC.;<br>　　*Plaintiffs,*<br><br>v.<br><br>SANDOZ INC; SANDOZ INTERNATIONAL GMBH; and SANDOZ GMBH,<br>　　*Defendants.* | Misc. Case No. 3:17-mc-44<br><br>Underlying Case:<br>Civil Action No. 16-CV-1118-CCC-MF<br>(Pending in the District of New Jersey) |

## NON-PARTY DR. BRUCE BEUTLER'S BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

TO THE HONORABLE JUDGE:

Pursuant to Federal Rules of Civil Procedure 45 and 26(c), non-party movant Dr. Bruce Beutler ("Dr. Beutler") files this Brief in support of his Motion to Quash Subpoena and Motion for Protective Order, and in support thereof, would show this Court the following:

## INTRODUCTION

Dr. Beutler is a Nobel Prize-winning scientist at the University of Texas Southwestern Medical Center ("UT Southwestern"). He is the Director of the Center for Genetics of Host Defense, which is one of the largest laboratories at UT Southwestern. On June 3, 2017, Dr. Beutler was served a subpoena (the "Subpoena") to testify in a June 27, 2017 deposition in a pharmaceutical patent lawsuit pending in the District of New Jersey styled *Immunex Corp., et al. v Sandoz Inc., et al.*, No. 16-CV-1118 (D.NJ) (the "Underlying Lawsuit").

Dr. Beutler is not available for deposition on the requested date, but more importantly, Dr.

Beutler simply is unlikely to have relevant information in this litigation that would outweigh the "annoyance, embarrassment, oppression, or undue burden or expense" incurred by the deposition. Dr. Beutler had no involvement with the patents at issue in the Underlying Litigation. Indeed, the defendants in the Underlying Litigation appear to be using the Subpoena to conscript a Nobel Prize-winning scientist to serve as an uncompensated expert to opine about the patents asserted against them, in plain violation of Rule 45(d)(3)(B)(ii).

Dr. Beutler's counsel has conferred with the attorney issuing the Subpoena in an effort to resolve this dispute, and that attorney has agreed not to pursue the June 27 deposition date, but has asked for Dr. Beutler's deposition on a later date.

Accordingly, pursuant to Rule 45(d)(3), Dr. Beutler asks the Court to quash the Subpoena as imposing an undue burden, and for an order awarding Dr. Beutler the costs and fees incurred in responding to and challenging the subpoena. In the alternative, Dr. Beutler moves for a protective order under Rule 26(c) narrowing the time and scope of the requested deposition, and preventing Dr. Beutler from serving as an uncompensated expert.

## BACKGROUND

**A.  Dr. Beutler is a Nobel prize-winning scientist who performed TNF research back in 1991.**

Dr. Beutler is an immunologist currently working as Director of the Center for Genetics of Host Defense, which is one of the largest laboratories at UT Southwestern. **Exh. A** (Beutler Decl.), ¶ 1. He is recognized as one of the most prominent researchers in his field, having authored or co-authored more than 300 papers, which have been cited more than 50,000 times. *Id*. ¶ 2. His work has been recognized by the Shaw Prize (2011), the Frederik B. Bang Award (2008), the Balzan Prize (2007), the Gran Prix Charles-Leopold-Mayer (2006), the William B. Coley Award (2005),

the Robert-Koch-Prize (2004), and other honors. *Id*. In 2011, he was awarded the Nobel Prize in Physiology or Medicine. *Id*.

Among his pioneering research work, between 1984 and 1986, Dr. Beutler was a member of the research team that first isolated mouse tumor necrosis factor-alpha ("TNF"), and showed this protein mediates inflammation. *Id*. ¶ 3. In or around 1991, he invented a molecule designed to neutralize TNF. UT Southwestern filed a patent on this invention in 1992, which was issued in 1995 as Patent No. 5,447,851 ("the '851 Patent"). *Id*.

As Director of the Center for Genetics of Host Defense, Dr. Beutler currently is busy supervising a team of approximately 70 researchers studying gene mutations affecting the immune system, working to treat many human diseases such as cancer and diabetes. *Id*. ¶ 6.

**B.  The Underlying Litigation concerns five patents, none of which involve Dr. Beutler.**

The Underlying Litigation is a pharmaceutical patent infringement lawsuit, where Immunex Corp., Amgen Manufacturing, Limited; and Hoffmann-La Roche Inc. ("Plaintiffs") assert claims against Sandoz Inc., Sandoz International GMBH; and Sandoz GMBH (collectively, "Sandoz Defendants"). **Exh. B** (Complaint).

Plaintiffs assert infringement of five patents relating to a pharmaceutical drug, ENBREL. *Id*. ¶ 9. These five asserted patents are identified as the '182 Patent, the '522 Patent, the '225 Patent, the '605 Patent, and the '631 Patent (collectively, the "Asserted Patents"). *Id*. at ¶ 10. A review of the USPTO filings for these patents show these five Asserted Patents were issued between 2011 and 2014—long after Dr. Beutler's '851 Patent was issued in 1995. Dr. Beutler had no involvement with the Asserted Patents. **Exh. A.** ¶ 4.

Plaintiffs and the Sandoz Defendants have been in litigation since February 2016, with fact discovery closing on June 30, 2017. **Exh. C** (Scheduling Order). On June 3, 2017—less than a

month before the close of fact discovery—the Sandoz Defendants served Dr. Beutler with a subpoena to appear at deposition at 9:00 am on June 27, 2017. **Exh. D** (Subpoena). Dr. Beutler was not contacted by counsel for the Sandoz Defendants with respect to minimizing his burden in complying with the subpoena. **Exh. A**, ¶ 5. Dr. Beutler was not asked—and has not agreed—to be a fact or expert witness for either side of this lawsuit. *Id*. The Subpoena itself gives no limitation on time nor indication of relevant subject matter for the deposition.

**C.  The Subpoena seeks Dr. Beutler's opinion testimony about two of the asserted patents.**

The undersigned counsel contacted Melinda Lackey, the attorney for the Sandoz Defendants issuing the Subpoena, to confer on this motion. Ms. Lackey agreed not to pursue the June 27 deposition date due to Dr. Beutler's unavailability, but she requested other dates that week. When asked what relevance Dr. Beutler had, Ms. Lackey said they wanted to depose him to support their invalidity defenses for two of the Asserted Patents (the '182 Patent and the '522 Patent). She stated on the phone that the work in Dr. Beutler's '851 Patent was in the same area, and "his work made their work obvious." Thus, the only apparent basis for relevant testimony is the similarity and obviousness between the '851 Patents and two patents that were issued 16 years later.

Dr. Beutler's '851 Patent was already cited and reviewed by the Patent Office as prior art with respect to these two patents, thus there is little good faith basis to believe a deposition regarding his 1991 prior work would invalidate these patents. **Exh. A**, ¶ 4. Moreover, the basic thrust of such a deposition would be to seek Dr. Beutler's opinions regarding the similarity or obviousness issues between these two patents and his prior work—and Dr. Beutler declines to give any such opinion. *Id*.

## SUMMARY OF ARGUMENT

The Court should quash the Subpoena and issue an order protecting Dr. Beutler from testifying because the requested deposition is unduly burdensome and disproportional to the needs of the case in light of Dr. Beutler's lack of relevant knowledge. Moreover, the Subpoena seeks to extract expert testimony from a non-party witness who has not been retained by a party in the Underlying Litigation. In the alternative, even if the Sandoz Defendants could make the threshold showing that Dr. Beutler has any relevant knowledge, Dr. Beutler is entitled to a protective order narrowing the time and scope of the requested deposition to prevent him from serving as an uncompensated expert.

## ARGUMENT

Federal Rule of Civil Procedure 45(c) directs the court for the district where compliance is required to quash or modify a subpoena that "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iv). Similarly, Rule 26(c) permits courts to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c).

**A.   The subpoenaing party cannot show relevance that would justify the annoyance and undue burden of sitting for a deposition.**

As a threshold matter, to survive a motion to quash, the "subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1)." *In re Domestic Drywall Antitrust Litig.,* 300 F.R.D. 234, 239 (E.D. Pa. 2014). The newly amended Rule 26(b)(1) is intended to "encourage judges to be more aggressive in identifying and discouraging discovery overuse" by emphasizing the need to analyze proportionality before ordering disclosure of relevant information. *State Farm Mut. Auto. Ins. Co. v. Fayda,* 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015*)*. Assuming this relevance test is met,

the subpoenaed nonparty must show that the requested discovery will cause a clearly defined and serious injury, and then the Court conducts a balancing test to weigh the competing interests. *In re Domestic Drywall Antitrust Litig.,* 300 F.R.D. at 239.

As discussed above, Dr. Beutler had no role regarding the five patents at issue in the Underlying Litigation. **Exh. A**, at ¶ 4. The Sandoz Defendants appear to acknowledge this, but want his deposition to investigate the similarities between his '851 Patent and two of the five patents (the '182 Patent and the '522 Patent). Apart from having to disclose <u>opinions</u> he might have (an issue addressed below) about the two patents, Dr. Beutler would not have any relevant <u>factual</u> knowledge related to the two patents—which involve inventions that Dr. Beutler did not invent. *Id.*

Dr. Beutler's '851 Patent was issued in 1995, about 22 years ago. The '182 Patent was issued in 2011 (16 years after Dr. Beutler's patent), while the '522 Patent was issued in 2012 (17 years after). There is scant likelihood that Dr. Beutler has any relevant recollections from 22 years ago that would be pertinent to patents that were issued 16+ years later.

However, the cost of sitting for a deposition is substantial to Dr. Beutler, whose availability the week of the requested deposition[1] is extremely limited due to previously scheduled videoconference and meetings with faculty and staff. **Exh. A**, ¶ 6. Interrupting these scheduled meetings to sit for deposition that could take up to seven hours would be an annoying, burdensome distraction to the important research being done at the Center for Genetics of Host Defense. *Id.*

The Court should balance this clear interruption of research meetings with the scant likelihood of any relevant deposition testimony, and find that the burden is undue. FED. R. CIV. P.

---

[1] Fact discovery in the Underlying Litigation closes at the end of that week, but the Sandoz Defendants left themselves little room for error in waiting until the last month to seek to depose Dr. Beutler. *See* **Exh. C** (scheduling order).

45(d)(3)(A)(iv). The Court should protect Dr. Beutler from this undue burden by quashing the subpoena and issuing a protective order.

**B.     The Subpoena should also be quashed as seeking an unretained expert's opinion or information.**

Even if the Sandoz Defendants could articulate a theory of relevancy for Dr. Beutler's testimony, that theory would be based on Dr. Beutler's opinions or scientific, technical knowledge as an expert witness. Accordingly, the subpoena should also be quashed under the separate provision of Rule 45 that permits courts to quash or modify subpoenas that seek "disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study not made at the request of any party." FED. R. CIV. P. 45(d)(3)(B)(ii).

"As the Advisory Committee notes on the 1991 amendment to Rule 45 illuminate, Rule 45(c)(3)(B)(ii) was designed to "provide[ ] appropriate protection for the intellectual property of the non-party witness ...." *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 76 (D. Mass. 2006) (*citing* FED. R. CIV. P. 45(c)(3)(B)(ii) advisory committee's note). "[C]ompelling experts to testify unfairly denies them 'the opportunity to bargain for the value of their services.'" *Id*. "Thus, Rule 45(c)(3)(B)(ii) 'establishes the right of such persons to withhold their expertise ....'" *Id*.

Dr. Beutler is clearly "qualified as an expert by knowledge, skill, experience, training, or education." *See* FED. R. EVID. 702. Moreover, giving testimony regarding the similarities and the obviousness of the Asserted Patents compared with Dr. Beutler's own work on the '851 Patent would necessarily involve his specialized knowledge and expert opinion. Dr. Beutler has no involvement and thus no first-hand knowledge regarding the Asserted Patents—so any testimony related to the Asserted Patents would be opinion testimony.

Clearly, it would be advantageous to the Sandoz Defendants to conscript a Nobel Prize-winning scientist to provide them expert opinion testimony related to the invalidity of the Asserted Patents. However, Dr. Beutler has not been disclosed as an expert nor retained by any party as an expert in the Underlying Litigation. **Exh. A**, ¶ 5. To the extent he would have any opinion regarding the similarity or obviousness issues, he explicitly declines to give any such opinion. *Id*. ¶ 4. Because Rule 45 "establishes the right of such persons to withhold their expertise," the motion to quash should be granted. *See In re Pub. Offering PLE Antitrust Litig*., 233 F.R.D. at 76. In the alternative, at a minimum a protective order should be entered to prevent any questioning seeking Dr. Beutler's opinion in any form.

## CONCLUSION

For the foregoing reasons, Dr. Beutler respectfully request that the Court quash the subpoena, and enter a protective order to prevent Dr. Beutler's forced and involuntary involvement in this litigation.

DATE: June 20, 2017

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ *Drew L. Harris*
**DREW L. HARRIS**

        Assistant Attorney General
        State Bar No. 24057887
        Office of the Attorney General
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
        (512) 463-2120   (512) 320-0667 (FAX)
        drew.harris@texasattorneygeneral.gov

        **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Melinda Lackey, the attorney issuing the subpoena, by phone on June 16, 2017 to seek her agreement to withdraw the subpoena, and no agreement was reached.

        /s/ Drew L. Harris
        **DREW L. HARRIS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on the **20th day of June, 2017**, upon the following individual by Certified Mail, Return Receipt Requested and via electronic mail:

Melinda K. Lackey
Merritt Westcott
WINSTON & STRAWN LLP
1111 Louisiana 25th floor
Houston, Texas 77002
MLackey@winston.com
*Attorney Issuing Subpoena and for Defendants*

David T. Pritikin
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
dpritikin@sidley.com
*Attorney for Plaintiffs*

        /s/ Drew L. Harris
        **DREW L. HARRIS**